## Monmouth Oyer and Terminer.

### JULY TERM, 1795.

### THE STATE v. MAIRS AND MAIRS

1. Whether the attorney general is bound to furnish prisoners with a copy of the indictment and list of the jury, before they request it. *Query.*

2. It is improper to ask a witness what defendant meant by an expression the witness had sworn that he had used.

3. It is proper to prove a general malice or subsisting quarrel on the part of the prosecutor against the prisoners, but it is improper to inquire into the particular facts by which this malice is manifested.

4. It is not correct to inquire whether the general character of the prosecutor is peaceable or quarrelsome; this cannot affect his credibility.

5. The court refused to charge the jury as to the extension of the Coventry act; it is their business to find the facts, and the sufficiency of the indictment is for the after consideration of the court.

6. If the nose is bitten off, it is a cutting off, within the meaning of the statute.

7. If A is charged in the indictment as principal, and B as accessory, and the jury find B to be the principal, and A the accessory, the indictment is supported.

This was an indictment on the Coventry act, with a second count, charging an assault and battery. The indictment charged that Apollo and David Mairs, "after the 24th of June, 1761, to wit, on the 24th of March, 1795, at Upper Freehold, did lie in wait, and of their malice and aforethought feloniously and unlawfully did make an assault on William Wilds, with an intention to maim and disfigure him, and that Apollo Mairs, with a knife, which he held in his right hand, did on purpose, and of his malice aforethought, by lying in wait, feloniously cut off the nose of the said William Wilds, with an intent to disfigure and maim

The State v. Mairs and Mairs.

him; and that David Mairs was present at the time, and unlawfully and feloniously, knowing and being privy, and criminally aiding and abetting the said Apollo Mairs to commit the said [454] felony; and that the said Apollo and David, on the day aforesaid, of their malice aforethought, by lying in wait, did commit the felony aforesaid, unlawfully and feloniously, against the form of the statute in such case made and provided."

2d. A common assault and battery.

To this indictment the defendants pleaded not guilty.

A great variety of testimony was adduced on the trial, fully proving the main facts charged upon the defendants, which it is unnecessary to detail. The following questions and points of evidence occurred, and were ruled by the court:

1st. The counsel for the prisoners alleged that the prisoners had not been furnished with a copy of the indictment and the panel of the jury, which they contended the attorney general was bound, *ex officio*, to do, under the act of assembly, without any demand or request being made for the same by the prisoners.

The *Attorney General, contra.*

Kinsey, C. J.   I am by no means satisfied that the prisoners were entitled to copies of the indictment and panel, without demanding them.   We will, however, consider of it.

The question was not again mentioned.

2d. *Leake*, for defendants, asked a witness, upon his examination, what Mairs meant by an expression which the witness had sworn that he had used.

Per Chief Justice.   The question is altogether improper.

3d. *Stockton*, for the state, put these questions to a witness: " Did old Mairs ask you who it was ?" "Did you tell him ?" " Did he tell you to desire Apollo ?" &c.

Per KINSEY, C. J. These are leading questions, and therefore improper. I knew a man acquitted of a foul murder because the principal witness for the prosecution became paralytic before the trial, and could only answer " yes" and ".no ;" and the court would not permit the facts upon which [455] his evidence was wanted, to be put to him in the interrogatory.

4th. *Leake* offered one Forman, to prove that Wilds, the prosecutor, who had been examined, harbored malice against Apollo Mairs, one of the prisoners, that he had in a previous quarrel, bit off Mairs' nose, and had afterwards threatened he would tear out his wind-pipe and eat it up, if it cost him his life. This evidence was introduced for the purpose of discrediting the testimony of the prosecutor, and to lead the jury to believe that Wilds had probably commenced the affray.

It was objected to, so far as it went to a detail of the grounds of the malice, and the particular language in which this malice was manifested, as the state could not come prepared to contradict it.

*Ogden* and *Leake*, in reply, contended, that they were entitled to prove a witness undeserving of credit—1st. By general reputation, which is by an inquiry into his general character for veracity. 2d. By showing that his testimony is not entitled to full credit, on account of private malice against the person whom he accuses, or a quarrel with him ; and in this last case it is proper to admit testimony going to show the particular grounds of this enmity or malice, and the particular circumstances or expressions in which it has been displayed. They cited upon the general principle,

*Watts* v. *Brains, Cro. El.* 778; *Brown* v. *Seymour,* 1 *Wils.* 5; *Cockroft* v. *Smith, Salk.* 642; *Cook* v. *Beal,* 1 *Ld. Ray.* 176, to show that the circumstances of a previous dispute, or the origin of the quarrel between the parties, constituted an important part of every case.

PER CUR. The evidence is improper so far as it tends to prove particular causes of malice, or particular expressions of ill will and revenge. You may establish the point of general malice or ill will, by asking the witness if the prosecutor was not known or reputed to entertain feelings of hostility towards the prisoner, prior to the offence charged. Or you may prove a particular malice by asking the witness if he knows that prosecutor entertained any hatred or revengeful [456] spirit towards the prisoner—but you are not allowed to inquire into the particular manner in which the prosecutor showed these feelings; for a witness may always come prepared to answer general imputations, with regard to his character, but he cannot come prepared to rebut the testimony which may be given with regard to individual facts. The rule is reasonable and correct. *Bull.* 295.

5th. *Leake* asked the witness what was the general character of the prosecutor, as to his being a peaceable or quarrelsome man; and contended that if it appeared that his disposition was a quarrelsome one, it might afford a ground for the jury to infer that he had made the first assault, although he had sworn that Mairs struck first.

PER CUR. A man may be a boxer or a bully and yet speak the truth upon oath. The establishment of this point in his character will not lessen his credibility; he has sworn positively to the fact; the evidence is therefore irrelevant and inadmissible.

After the evidence was closed, the counsel for the prisoners requested the court to charge the jury upon the exten-

sion of the Coventry act, (on which this indictment was grounded,) to this state; and stated they were prepared to argue the question, if any doubts were entertained by the court.

The court refused, saying that at this time the jury were only to find the facts, on the plea of not guilty; the questions as to the extension of the statute or the sufficiency of the court, would come before them more properly on a motion to arrest the judgment, in case the prisoners should be convicted.

KINSEY, C. J., charged the jury (after stating the nature of the accusation, and what was the peculiar province of the jury in this case.)

In order to find the defendants, or either of them guilty, upon the first count, it is necessary you should be satisfied of these facts—1st. That there was an actual lying in wait. 2d. That the defendants actually cut or slit the nose of the [457] prosecutor with the intention to maim or disfigure him. 2d. That the act was done maliciously.

The proofs of these circumstances must from their very nature be drawn from the actions of the party. The intentions and views with which a man enters upon the perpetration of a criminal act, are not generally expressed in language. If you, however, upon deliberately weighing the testimony which you have heard, shall be of opinion that the defendants watched an opportunity and actually carried their intention into execution by cutting off the nose of Wilds, it is, in point of law, maliciously done. Deliberation and cruelty evince a mind regardless of social duty, and are full proof of malice; and under these circumstances they may be said to lie in wait for the purpose.

Some observations have been made upon the manner in which the nose has been taken off. Upon this part of the case I must remark that the substance of the crime charged upon the defendants, is the wilful and deliberately cutting off the nose, and whether this is effected by one instrument or

another is perfectly immaterial. (a) I think I may go further, and say if the party deliberately and with the intention of biting off the nose of another, watches his opportunity and effects his purpose, the nose may be said to be cut off, and the jury would be bound to find so. It is not necessary to prove it to have been done with a knife as laid in the indictment.

Another thing is important to be stated. If both were present, and one only committed the crime by cutting off the nose, and the other was aiding and abetting, both are equally guilty; both may be said to have done the act, and both are answerable for it as principals. In this case Apollo Mairs is charged as the principal and David as accessory, yet if you find that David was the principal and Apollo the accessory, the *indictment is sustained.*

The jury found a verdict of not guilty upon the first count, and guilty upon the second; and the court fined David (the [458] father) one thousand dollars, and Apollo (the son) five hundred, and bound each of them to their good behavior with sureties for three years.

(a) " The indictment must declare how and with what it was done, viz., with a certain sword, &c. Yet if the party were killed with another weapon, it maintains the indictment." *Crown Circ.* 104, §§ 52--3.